Good afternoon, Your Honor, and may it please the court. My name is John Klein, and I represent Mr. Colorado Cessa, who I will refer to as Mr. Colorado. This case was, we have two issues here, one involving jury instructions, the other the grand jury. I'm going to try to touch on both of them in my time. First, the jury instruction issue. This was a case that was almost tried on stipulated facts. All of the relevant conversations were recorded, or almost all. The jury had the transcripts, the parties had the transcripts. So there wasn't any real question about what was said. The real issue was, did this discussion, and also, just to be completely candid with the court, there wasn't any question that Mr. Colorado and his son and his accountant, Mr. Segura, were talking about bribing Judge Sparks. There was no mystery about that. The question was whether these discussions between Mr. Colorado and his son and his accountant, and between those two and the two undercover officers who were posing as intermediaries, whether those discussions rose to the level of an offer or a promise. That was really the only issue in the case, and it was argued vigorously from Vordeer, right through closing argument. And the issue here is whether the jury should have been instructed, not just on the bare language of the statute, whether there was an offer or a promise, but on the meaning that this court ascribed to those terms in the Hernandez case. We requested that instruction, and although Judge Walter expressed some doubt about whether it was a correct statement of the law, the government doesn't seem to be making that argument on appeal. The real issue that the government seems to be arguing here is whether the instruction that we requested was substantially covered by the instruction that was given. By the Pattern Fifth Circuit charge. Pattern Fifth Circuit charge. And I think the answer to that has to be no. Let me ask you first, he was convicted of conspiracy and a substantive bribery offense? Yes. And you asked for the instruction on both counts? Yes. Why would it apply to the conspiracy count, because you want this instruction that mere preparation isn't enough, but a plan to bribe would be conspiracy, right? Well, Your Honor, there would have to be, as with any conspiracy to commit an offense, as opposed to the fraud of the United States, there would have to be an agreement to commit the underlying crime. And to understand whether there was that kind of agreement, you have to understand what the underlying crime consists of. And if there was merely an agreement among Mr. Colorado and the other two to explore the possibility of bribing Judge Sparks, that wouldn't be a conspiracy to commit bribery. On the other hand, if there was an agreement to make an offer, whether or not an offer was ever actually made, then you'd have a crime. And so in that sense, the instruction on the substantive offense was important to both counts. And I will say, Your Honor- You're saying the evidence was there was just an agreement, if anything, to feel them out and see if maybe there was some possibility, but never to actually bribe. Well, that was certainly the argument that we made at trial. And I think there's plenty of evidence to support that. No, I'm not saying the evidence is insufficient on offer or promise, even under Hernandez. We're not making a sufficiency of the evidence argument. But there was a real question here, whether this was just a discussion that was going on of a possibility that everybody was dubious about, or whether it ripened into a true offer or promise to bribe. You know, we've said that the pattern instruction is a safe harbor for the district judge where it correctly states the law. And I mean, the judge's charge correctly stated the law, didn't it? As far as it went, yes. And we were not arguing that the pattern instruction was wrong. We were arguing that it should have been supplemented. And this court has said that pattern instructions are guides, that they are helpful, but- I think we've gone farther than that. We say it's a safe harbor if they correctly state the law. Well, the court, the case, Your Honor, and I apologize for not citing this. We cited an 11th Circuit case in our brief. The case that I would cite for the useful guide language is U.S. v. Williams. It's 20 F. 3rd 125 at page 131. But in any event, Your Honor, we're not saying the pattern instruction was wrong. It was fine to get that instruction and we didn't have any objection to it. What we asked for was that it be supplemented with a further definition of these terms. And the judge, as part of the pattern instruction, explained official act. He defined official act, he defined public official, he defined several things that weren't really in dispute in the case. But the one thing that was in dispute, the real heart of the matter, didn't get a definition. And in fact, the one time it did get a definition was when the agent testified. Now, Judge Walter sustained our objection, but the agent managed to get out before we objected and stopped him, that mere discussion, he said, just as they did here, mere discussion is one way to commit this offense. Well, it's not. Under Hernandez, mere discussion is not a way to commit the offense. In fact, Hernandez says the opposite. So it was really vital if we were gonna have a shot in this case that we get that.  in arguing the case to the jury to flesh all this out, didn't he? He certainly did. There was no, we were able to argue the inferences as vigorously as we wished, and so was the prosecution. But this court has said a number of times, and we cite those cases in our reply brief, that argument is no substitution for an instruction. And that was the problem we had here. Not only did we not have the instruction, we had, of course, the government arguing its view of what was required for an offer of promise. And we had Agent Pena's truncated testimony to the effect that mere discussion was enough, and mere discussion is not enough. And that misimpression never got corrected. Depends on what the discussion is, doesn't it? Well, that's a good point. Mere discussion, mere discussion is not enough. Discussion that goes further than being mere discussion and ripens into an offer, or an expression of a, in the terms of Hernandez, an ability and a desire to pay, then it's an offer, then you have a crime. But the line between those two, which is, of course, exactly what Hernandez was exploring, was critical in this case. It was all the case was about, really, from start to finish. So we have here an instruction that correctly states the law it was not substantially covered, because there was no definition given of offer or promise. And it went to an important issue in the case. And partly because it went to an important issue in the case, I would argue it's not harmless error to refuse this instruction. In fact, part of the reason Judge Walter declined to give it was that it would be so powerful. He said, it's almost like having me direct a verdict of not guilty. I think that was a bit of an overstatement, but it was certainly crucial to our ability to defend this case. Before you run out of time, would you get to the issue with the superseding indictment? Yes. Louisiana versus Texas. And this is an issue that I will profess to the court, I find baffling, largely because there doesn't seem to be any law on it. There's no case law that is directly on point. There's no rule that clearly governs it. Rule 21C, I think, gives us some support, but it's not definitive. It is a interesting and puzzling question. As a practical matter, it's hard for me to imagine that it would work to have a case that is transferred, as this case was, from- At defendant's request. At defendant's request. So there was no issue of venue, for example. That's something the government has raised. We waive venue, so there was no question about venue being proper in the Western District of Louisiana. Once the case got transferred there, it was transferred, and the only authority we cite for this is Professor Wright, who was my professor and a wonderful professor, but he's not a case and he's not a rule. The case was transferred for all purposes, and I think as a practical matter, that has to be the rule. It just doesn't make sense that a case can get transferred. I mean, here, geographically, it wasn't far, and the prosecutor stayed the same and the judge stayed the same, but a lot of times in these cases, they get transferred from, say, and I'm gonna talk about one of my own cases that's pending right now, from the Northern District of Ohio to the Northern District of California. Once it's transferred, there's a new judge and a new set of prosecutors. It just doesn't make sense that a grand jury back in the Northern District of Ohio could just turn around one day and issue a new indictment in the case. Where was that crime committed, Ohio or California? Both. Two crimes, two venues? Well, it was a continuing offense, so either venue would have been. But in this case, the crime was committed in Louisiana. No, well, in Texas. I mean, Texas, so the superseding indictment, didn't it have to come out of the state where the crime was committed? Not once we waived venue. That's purely a venue issue, Your Honor, and once we make the motion to change venue, we waived it. Well, it was sent back for sentencing. It was, but that was just another transfer, and the fact that the judge had to transfer it back for sentencing suggests that, in his mind at least, everything was happening in the Western District of Louisiana unless he took some affirmative action to change that. And as you say, there's no rule that clearly prohibits this or authorizes it. There's no authority directly on point, so why don't we just look back at the whole purpose of a grand jury, which is that a local grand jury indicts crimes in that community. That's why, as you know, I mean, the indictment says on this date, in the Western District of Texas, this crime occurred. What's the problem with having a Western District of Texas grand jury make that determination of whether a crime occurred within the jurisdiction? Well, from a sort of a broad policy standpoint, maybe that would be okay, except that I think, as I mentioned before, there's a real potential for mischief if you have two grand juries, because presumably a grand jury in the Western District of Louisiana could have acted as well. So you've got now two grand juries that are empowered to act in the same case. But they would have had to allege it happened in the Western District of Texas, right? Because that's where the crime happened. Yes, yes, I think they would have. But as a logical matter, once the case is transferred, it should be transferred for all purposes. This case was not transferred for all purposes. It was transferred for trial only, as I understand it. That's not what Judge Walter's order said, and it's not how the case, in fact, was handled. Judge Walter's order said the case is transferred. And, for example, pretrial motions, all pretrial litigation from the time of the order on, all pretrial litigation was, with the one exception of this superseding indictment, every filing was in the Western District of Louisiana, every pretrial hearing was in the Western District of Louisiana, and sentencing would have been in the Western District of Louisiana had Judge Walter not taken the affirmative step of entering an order transferring it back to Texas. So I think, I think in everybody's mind, it was transferred for all purposes. And then there's just this question, and Judge Costa, I think that's a good point. But I'm just trying to see, other than, I understand you have this technical, once it was transferred, there was no jurisdiction, but what's the reason a grand jury in Austin or San Antonio, I guess it was Austin, couldn't have indicted this case again? You were gonna be tried, if they hadn't superseded, you were gonna be tried on a case indicted by an Austin grand jury, right? We were, I mean, now the superseding indictment, it wasn't a mere technicality, it added an element that had been omitted from the original indictment. But yes, the short answer is yes, we were gonna be tried on an indictment from the grand jury. Here's why I think it's important. On the specific facts of this case, maybe it's not that significant. But as a policy matter, and as a structural matter, I do think it's important, because take my example involving the Northern District of Ohio and the Northern District of California. As far as everyone knows, that case is now fully pending in the Northern District of California. There's a Northern District judge, there are Northern District prosecutors, there are Northern District lawyers, that's what everybody thinks. If it were to turn out that a grand jury in the Northern District of Ohio, in Cincinnati, could turn around and issue a superseding indictment in the case, I think that would come as more than a shock. It would sow confusion, to put it mildly, with the case. And I think the case has to be one place or the other for all purposes. And in this case, I think once the order was entered, it was the Western District of Louisiana. Also, for convenience, all the witnesses are in Texas. There's the people in the jail and whoever testified at the grand jury. I think, Your Honor, I think it was just maybe an agent or two in the grand jury, but you're right. So you're talking about structurally and as a matter of policy, it seems very practical to have the grand jury where the witnesses are located. That'd be one consideration. Well, it might be, Your Honor, although that's not what drives the location of grand juries in other settings. People get indicted in the Southern District of New York for things that happen all over the world, then they get the- When you have to, yeah, sure. Anyway, thank you. I'll save my five minutes for a moment. Good afternoon, Elizabeth Barringer from the Western District of Texas. On behalf of the United States, may it please the court. First, I would like to address the court's instructions in this case, since that was pretty much the order that defense counsel did. It wasn't an abuse of discretion in this case for the court to give a time-tested pattern instruction laying out what this circuit has said is the instruction for this type of case. Although a defendant is always free to ask for clarifying terms that support his theory of the defense, the district court certainly wasn't constrained by that defense theory and putting it into what was already a time-tested instruction. The defendant cited a couple cases, McDonald, of course, the recent Supreme Court case, and Burroughs, and analogizing this case to those cases, but there's something that's very different about this case versus the cases cited in the reply brief, and that's that McDonald, the court actually gave a definition of the terms in a proper instruction and defined them improperly, over-broadly, and allowed the defendant to be convicted of innocent conduct, and that is not the case here. The defendant could not be convicted unless he made an offer or promise. Could the instruction be more clear? Could it exclude preparatory acts? It certainly could, and the government didn't object to the instruction at trial, but it wasn't an abuse of discretion for the court to give that instruction. Another example, and also in Burroughs, the court refused to give a pattern instruction and ended up giving an errant instruction as a result, but unlike McDonald, this is an offer-promise case, and every juror that had ever bought a car knows what an offer is. They know the difference between making an offer for a car and going and kicking the tires around and seeing what's available in the stock. They know that, that's not something that's beyond the realm of possibility, unlike McDonald, which required a high degree of technical proficiency. I read it and I still have trouble understanding what the Supreme Court was saying, exactly what those terms mean, and also the court's charge as a whole covered the substantial elements of the offense. Not only was there directly or indirectly offered or promised of something of value, the defendant had to do so corruptly with an intent to induce Judge Sparks, and the defendant was not precluded, again, from arguing that it didn't rise to the level of an offer or promise. It well argued throughout the trial that the jury understood that that was the issue. Did it rise to mere chit-chat or was it not? But the most important thing about this case is whether the instruction was given or it was not given, this is not a mere preparation case. I know the court is very familiar with the record in this case, but there is the overwhelming evidence that the defendant conspired and the defendant made an offer or promise, and his go-betweens made an offer or promise to try and get a lower sentence. At the very first meeting on July 18th, the defendant's go-between said, if a connection is made, we'll bring the dough. It's typical of these types of cases, it's been said in other cases, there's a clandestine atmosphere of corruption. So no one's gonna say in a bribery case, they're just not gonna go on out there and say that, but the jury certainly could have interpreted from those statements. And then later, they said a some certain in this case, a some certain, they all decided on 1.2 million. One of the agents testified that the go-betweens were completely unfazed by the amount, they agreed to it. And finally, I direct the court's attention to that fourth meeting on August 30th, where Pena actually confirmed to the go-betweens that Judge Sparks had accepted the offer to take the bribe, that he would be willing to take six points off the PSR, and that he would be willing to give a rule 35 afterwards, within a week afterward. Eventually, by the fifth meeting, they'd agreed that they were gonna cut it down to a nine-month sentence. So as the defendant doesn't raise a sufficiency challenge, I know it's a different inquiry, the harmlessness error of sufficiency, but the evidence was simply overwhelming in this case, and any error in the instructions was not gonna make any deal of good to this particular case. A breakdown that caused no money to change hands. Well, that's not required. I know that, I know that, but I'm just saying, it certainly wasn't finalized to the point where money changed hands, and what broke down to cause that? Yeah, I think this is where Judge Walter's concern, I don't wanna ascribe his intent, because I certainly don't know exactly what he was thinking when he decided to do it, but we have some evidence of what he was thinking. And there was this whole discussion about preliminary discussions. You can't think of preliminary discussions, and there's sort of two sort of sets of preliminary discussions in this case. There's the preliminary feeling out, which is what Hernandez said is not enough. Feeling out, is Judge Sparks willing to do this? But then there's the whole preliminary negotiations. They hadn't yet paid. They hadn't determined when they were gonna set the price. They hadn't yet determined the particular amount, or mechanism, or how many Rule 35s it was gonna take. And none of that second category is necessary. This is an attempt statute. It includes inchoate offenses, such as offering. It includes promising. So just whether they had worked out the details, whether they had paid the bribe, that's sort of irrelevant to the determination. It's all about what happens before then, the offer promise. There's been cases where they found they couldn't even identify the public official, and it didn't matter, because if the defendant has the intent to do it. And I also think what Judge Costa mentioned is very important. This isn't just the underlying substantive offense. This is a conspiracy case. So all that preliminary negotiations, even the filling out, that's highly relevant to the agreement. It's highly relevant to the elements of the conspiracy offense. So I think Judge, I don't know what Judge Walter, if he was thinking this, I think he was, because he cited the Gallo case. And by citing the Gallo case, when he was explaining why he wasn't gonna rule and put in the instruction, Gallo's talking about intent. So all of that preliminary filling out, it goes to the defendant's intent. It goes to the conspiracy. It goes to other elements of the offense. So it certainly was within the realm of his discretion to determine not to do it, that he felt like it was a jury determination. The jury didn't need any extra help, much as this court has decided in very recent cases about not necessarily putting the theory of the defense into a jury instruction. I'm just gonna, must the court ask questions, move on to the grand jury issue, or? Okay. I would like to note just a few things. I know the court is very familiar with my brief, but you're not really waiving venue when you're doing a Rule 21. There's competing interest between Rule 21 and the right to be tried where you are. And you're not waiving venue, you're waiving the right to be tried where the venue is. And if any, I mean, it's the government's position that the grand jury in Austin was the proper body to supersede its own indictment. And there's good policy reasons for that. The government has no power to try a case other than where there's venue. And there's Rule 21 where it's transferred, but the government doesn't have the ability to do that. The government only has the power to try it in where the venue sits. It's the defendant's constitutional right. So what- I don't mean the place, the locale. I'm sorry, where the crime- The jury of your peers. Right, right. So what if the government supersedes the indictment in a way that makes the transfer order, the defendant doesn't like it anymore. The defendant doesn't want to be in New York. They want to respond to this new charge as is their right for a superseding indictment where it is. And if the case had been indicted in the new locality or superseded in the new locality, the defendant wouldn't have the ability, any mechanism to get back to where that venue is. Like this is a sword under Rule 21. It is not a shield. It's a, and the tenuous dance between due process and constitutional right to be tried where the crime occurred. You know, this is the way we found out to do it. But also I did want to notice that- Do you think you were able to supersede in Austin, in the Western District of Texas? Could you have superseded given the transfer in Louisiana? I mean, do you think you could have done it in both? I think the case law supports that we should have done it in Austin, especially for a superseding indictment. That's where the venue was. That's the proper place to do it. And- But none of those cases address directly this point, do they? No, they don't. Didn't I see in the briefing somewhere that the case was only transferred for trial only? I mean, that's the title of Rule 21, transfer for trial. Nobody had any objection when this case was sentenced in Austin. It's about trial prejudice. That's the whole point of Rule 21, is to promote the defendant's right to not have a prejudice jury that's been tainted by the jury pool. It has nothing to do with the inquiry of the initial charges. There's been cases cited in a footnote in my brief that found that the grand jury is sort of not subject to those same due process considerations of trial prejudice, of prejudice and concern about that. Lost my train of thought about this, but... Oh, about the allegation that it would be structural error. The government completely disputes that allegation. If anything, if the court were to find that this should have been indicted somewhere else, this was a proper indictment. It was a properly called grand jury. If there's any error here, it would be a Rule 21 error and not a Fifth Amendment error. There's no Fifth Amendment interest here by having the grand jury come from Austin. So rules of criminal procedure are not structural error. It would be a harmlessness error. And once the real jury, the trial jury, convicts, then it's harmless. So that would be the government's position on that. One moment, please. You can say the superseding indictment was critical to your prosecution. Well, there was an argument from the government that it wasn't, that they had noticed and it didn't implicate those same concerns. I think it was wisely superseded. So, but it was, as the court noted, a very technical correction. The defendant was the one who raised that Coropoly wasn't in the indictment. So it was obviously aware and had notice of that element. So it was out of an abundance of caution that it was superseded and it just simply made that one technical correction as the court recognized. Well, it added an element. It wasn't really a technical. It did add an element. So I wouldn't want to say that wasn't important. And I agree with you, but the court found that there was no prejudice to the defendant as a result of that. He called it a de minimis correction. I just want to note that the defendant was aided by the four corners of the instruction, which is contrary to the other cases that were cited in the reply brief, that he was fully able to argue to the extent possible based on simply the instruction that was given. And if the court doesn't have any further questions, I just ask you to be affirmed in the judgment and sentence. All right, Mr. Kline. Let me just talk briefly about the instruction issue. The notion, I disagree pretty strongly with the idea that there was overwhelming evidence in this case. There was certainly overwhelming evidence that they talked about bribing Judge Sparks. There was no question about that. The real issue is, was there overwhelming evidence of an offer or promise? And as interpreted in Hernandez, I think the answer is no. There was certainly enough evidence as the government has argued here. But on the other hand, despite efforts by the government to get a payment of some kind, there was never any payment made either ahead of time or even at the time of sentencing. The son and the accountant were arrested. Their rooms were searched. They had no large sum of money with them. So it's not like they came to the sentencing prepared to pay up if Judge Sparks performed. The government even asked at the very last minute, I mean, the government, the investigators were worried about this very point. They wanted to strengthen their case. And they tried to get a screenshot from Mr. Segura or from the son showing that the money was there and available. Some tangible evidence that they were curious about this. And it was never forthcoming. You have discussions between Mr. Colorado and his son where they're talking about whether this is real. Mr. Colorado expresses concerns with reason as it turns out that these were undercover officers that they were dealing with. He refers to them as fours. That's a slang for undercover officers. And at the end, after all of this back and forth and discussion, among the last words that Mr. Colorado's son speaks to him when he's describing the state of play, this is the day before sentencing, right after the last meeting, he says, it's BS. It all came to nothing but BS. So there was enough evidence that you can glean from these tapes to argue that there was expression of a desire and an ability to pay, which is what Hernandez requires. But there was evidence on our side as well. And to say that this is harmless beyond reasonable doubt, I think would be a real stretch. I wanna ask on the indictment issue, assuming you're right that there is a mistake, it should have been indicted in Louisiana. What's the prejudice? I mean, the Supreme Court has said in United States versus Cotton that the failure to allege an element in the indictment is the argument, the defendant argued, that's structural error. And the Supreme Court said, no, that's still subject to normal harmless error and plain error review. So why would just a venue defect in the indictment that does actually allege all the elements warrant automatic reversal? Well, our argument is, and as with all other aspects of our argument, I'm arguing sort of from first principles here. This grand jury, under our view, did not have the power to act here any more than in my other case, the grand jury in the Northern District of Ohio would have the power to act. So we went to trial on a indictment returned by a grand jury without the power to act. That is a structural error, structural in the sense that it goes to the structure of the process, and it's also structural in the sense that there's no way of measuring the harm. And those are the two sort of main tests that the Supreme Court has used to decide whether cases are subject to structural error. Puckett is one case, there was the one about counsel of choice. There are several cases along those lines. So I would say that if we're right on our underlying premise here, and I freely concede that that's an open question, I don't see how this can be subject to harmless error review. But wouldn't the initial grand jury who allegedly issued the deficient indictment, wouldn't it be incumbent upon them to remedy it by a superseding indictment? For the prosecutor to go back to the venue where the grand jury error was made? I don't think so. Why not? Because by the time the error was brought to the court's attention and to the government's attention, the case was no longer in that district. If it had been, then of course you're right. But because the case- Crime allegedly was committed. I beg your pardon? That's allegedly where the crime was committed. That's true. And if we were talking about the initial indictment here, if there'd been no waiver of venue, then you're absolutely right that a grand jury in the Western District of Texas would have had to return that indictment. But by the time this issue surfaced and the superseding indictment was returned, we had waived the venue, and the case had been transferred to the Western District of Louisiana. And in that circumstance, I think the indictment had to be returned by a grand jury in that district. We cite, by the way, just in a footnote, but I think it's sort of relevant, at least atmospherically, to the Jury Selection and Service Act and to the requirements for a juror to serve on a grand jury. And I think the Jury Selection and Service Act talks about jurors where the court is convened, I think is how they put it. Well, the court was convened by the time this happened in the Western District of Louisiana. Okay, thank you. Thank you.